**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

C.F. TRUST, INCORPORATED,
Plaintiff-Appellee,

v.

NANCY A. PETERSON,

Defendant-Appellant,

No. 96-1656

and

BARRIE M. PETERSON, Trustee,
Defendant.

C.F. TRUST, INCORPORATED,
Plaintiff-Appellee,

v.

NANCY A. PETERSON,

Defendant-Appellant,

No. 96-1704

and

BARRIE M. PETERSON, Trustee,
Defendant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-96-265-A, CA-96-264-A)

Argued: May 6, 1997

Decided: July 15, 1997

Before LUTTIG, WILLIAMS, and MICHAEL,
Circuit Judges.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Thomas Bacon, ALLRED, BACON, HALFHILL
& YOUNG, P.C., Fairfax, Virginia, for Appellant. Harvey Alan
Levin, BIRCH, HORTON, BITTNER & CHEROT, Washington,
D.C., for Appellee. **ON BRIEF:** James H. Lister, BIRCH, HORTON,
BITTNER & CHEROT, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Nancy Peterson appeals from the district court's denial
of her motion to vacate a confessed judgment obtained by appellee
C.F. Trust, Inc., on a pair of promissory notes endorsed by Nancy
Peterson. We affirm.

I.

On November 1, 1993, two promissory notes were executed by
DEP Inc. in favor of Central Fidelity Bank. DEP was 100% owned
by Scott Peterson, with Barrie Peterson, Scott's father and former
owner of the company, serving as trustee of the company. The notes
were signed and endorsed by Nancy Peterson, Barrie Peterson's wife,
as well as by Scott and Barrie Peterson, J.A. at 85, 89. By her signa-
ture, Nancy Peterson agreed "unconditionally to be bound, jointly and
severally, by all the terms and conditions of [the] Note[s]." J.A. at 85,
89. Nancy Peterson had never been an officer, director, or shareholder
of DEP, nor was she in any other way affiliated with the company,
except by virtue of her marriage to Barrie Peterson. Indeed, the record

2

evidence indicates that the only reason that Central Fidelity requested that Nancy Peterson sign the notes was because of her marriage to Barrie Peterson. J.A. at 33-34. There is also evidence that Central Fidelity assured the Petersons that it would not seek to collect on the notes from the assets of Nancy Peterson. J.A. at 33-34.

About two years later, on August 29, 1995, C.F. Trust acquired the notes from Central Fidelity. Subsequently, on February 1, 1996, C.F. Trust, attempting to collect on the notes, obtained a confessed judgment on the notes in the Circuit Court of Prince William County, Virginia. The case was removed to the federal district court and, on March 4, 1996, Nancy Peterson moved to vacate the confessed judgment, arguing that under both the federal Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f, and the Virginia Equal Credit Opportunity Act, Va. Code Ann. §§ 59.1-21.19 to 59.1-21.28, her endorsement on the notes was invalid, because those statutes prohibit a creditor from requiring the spouse of an applicant for credit to sign any credit instrument unless the creditor determines that the applicant is not independently creditworthy, see, e.g., 12 C.F.R. § 202.7(d)(1) ("[A] creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested."); see also 15 U.S.C. § 1691(a)(1).

Following what was essentially a balancing of the equities, the district court denied Nancy Peterson's motion to vacate the confessed judgment. J.A. at 27-28. Because the district court left the confessed judgment intact, it did not address the merits of Nancy Peterson's ECOA claims.

II.

Nancy Peterson argues that the district court erred in engaging in a balancing test because, under Virginia law, the court was "require[d]" to vacate the confessed judgment once she asserted an adequate defense under ECOA to her liability on the notes. See Appellant's Br. at 9-10. We disagree.

Under Virginia law, even if a debtor raises an adequate defense to liability on an underlying debt, the court may, in its discretion, refuse

3

to vacate a confessed judgment on that debt. Thus, the Virginia Code provides that

> [a]ny judgment confessed under the provisions of § 8.01-432 <u>may be set aside</u> or reduced upon a motion of the judgment debtor[,] . . . on any ground which would have been an adequate defense or setoff in an action at law instituted upon the judgment creditor's note . . . upon which such judgment was confessed.

Va. Code. Ann. § 8.01-433 (emphasis added). Although an adequate defense may be a necessary condition to a court's decision to vacate a confessed judgment, it is not necessarily a sufficient one, as the statute's discretionary language makes clear. Rather, a court is free, in its discretion, to refuse to vacate a confessed judgment even where an adequate defense has been asserted.

Here, the district court exercised the discretion accorded it under Virginia law and concluded that, notwithstanding the possibility that Nancy Peterson might have an adequate defense to liability under either the federal or state ECOA, the confessed judgment should stand. In the course of exercising its discretion, the court balanced several factors both in favor of and against granting Nancy Peterson's motion to vacate the confessed the judgment. The court considered the "very legitimate" "policy considerations" underlying ECOA's requirement that "some independent and justified reason why [wives] should have to risk their credit, and not just for the status of being a spouse," J.A. at 28, noting that "wives in particular ought not be forced to have to put their credit on the line just for the sake of the fact that they are the wife," J.A. at 27-28. Against this, however, the court "counterweighted" several important factors in support of C.F. Trust. The court thus considered the relative innocence of C.F. Trust as compared to Nancy Peterson, finding that while Nancy Peterson "was a party to the original documents, who had access to counsel, [and who] never moved to have her name removed as guarantor from the documents," J.A. at 27, C.F. Trust was essentially an "innocent holder of what would appear on its face to be a valid note and confess[ed] judgment," with "nothing in the record to suggest . . . that C.F. Trust . . . was in any respect the actual creditor involved in the alleged violation of ECOA," J.A. at 26-27. The court also considered

4

the public policy benefits of confessed judgments generally, commenting on how "the whole beauty of [confessed judgments] is [that they] allow[ ] creditors to be able to . . . immediately . . . start enforcement proceedings when there has been a default." J.A. at 27. Balancing these various factors, the court was "satisfied that in this case the motion to vacate should be denied, that the confess[ed] judgment should be permitted to stand," J.A. at 28, and so ruled.

We believe that in refusing to vacate the confessed judgment, the district court properly exercised the discretion afforded it under Virginia law. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

MICHAEL, Circuit Judge, concurring:

I concur in the result. I cannot agree with the majority's holding that under the Virginia statute "a court is free, in its discretion, to refuse to vacate a confessed judgment even where an adequate defense has been asserted." Ante at 5. However, I join in affirming because the plaintiff failed to present or forecast evidence that C.F. Trust was a "creditor" under the Equal Credit Opportunity Act. See 15 U.S.C. § 1691(a)(1) ("It shall be unlawful for any creditor to discriminate against any applicant . . . ." (emphasis added)). Because the plaintiff failed to offer an adequate defense, the district court's denial of the plaintiff's motion to vacate was proper.